GRIFFIN, J.
Daniel Aponte, Jr. [“Mr. Aponte”] appeals a judgment entered on the petition of the Florida Department of Revenue to adopt or enforce the judgment of a foreign jurisdiction and confirming child support arrearages owed as of March 29, 2004. We affirm.
Mr. Aponte has one daughter, born on June 4, 1994. In 1998, he had been ordered by a Rhode Island court to pay child support to his former wife, Judy M. Tolen-tino-Aponte [former wife], in the amount of $87 per week. Some time following their divorce, all the parties moved to Florida and Mr. Aponte accrued significant child support arrearages.
On June 23, 2004, the Florida Department of Revenue [“the Department”] filed a petition to adopt the Rhode Island judgment and to establish arrearages of $15,976.23 as of March 29, 2004. Thereafter, Mr. Aponte and former wife reached an agreement on the arrearages, which was reduced to writing and executed on October 8, 2004. Mr. Aponte agreed to pay former wife a total of $4,000 — one thousand dollars upon court approval of the settlement and $500 per month for six months beginning October 1, 2004, in settlement of all pending child support claims. In exchange for this, former wife agreed to “waive any and all clams [sic] she and/or the State of Rhode Island may have for past child support from Daniel Aponte, Jr.” That same day, the parties appeared at a hearing in family court in Rhode Island, during which the State of Rhode Island agreed to accept $500 in settlement of its claims against Mr. Aponte. The Rhode Island court incorporated these settlements into an order issued on October 20, 2004.
On November 1, 2004, Mr. Aponte moved to dismiss the Department’s petition, arguing that the issues raised by the petition were moot because of the settlement. Attached to the petition were copies of the parties’ settlement agreement and a copy of the Rhode Island judgment accepting the settlement. On December 27, 2004, Mr. Aponte filed a copy of the transcript of the October 8, 2004, hearing.
On February 4, 2005, the lower court denied Mr. Aponte’s motion to dismiss and ordered payment of temporary child sup *649 port in the amount of $69.23 per week, beginning on February 11. The case was continued to June 1, 2005.
On March 15, 2005, Mr. Aponte filed a motion to modify the February 4, 2005, order and for other relief, asserting that he had paid former wife $4,200 between October 2004 and February 1, 2005, and that, in addition, he had paid her $800 on February 1, 2005, which represented $300 per month in child support and $500 towards an unspecified arrearage.
On June 1, 2005, a hearing officer from the Department conducted a hearing to consider child support arrearages owed by Mr. Aponte and future child support payable by him. Mr. Aponte did not personally appear at the hearing, but his counsel did. Counsel asked the court to consider his March 15, 2005, motion, which sought credit for certain payments made towards his arrearages. The following exchange occurred:
THE COURT: —me say this: I just looked at the motion, and it appears that this motion is directed primarily at ultimately what Mr. Aponte’s child support arrearage obligation may be.
[HUSBAND’S COUNSEL]: Yeah.
THE COURT: And that’s before the court today. This motion, you know, makes it more clearly what Mr. Aponte’s position is, but I think it’s a little bit redundant to the fact that we’re going to be dealing with child support arrearages today, anyway, if we have time.
Part of the problem, however, is that if your motion is — primary thrust is as to child support arrearages credit prior to 03/29/01, this Court probably doesn’t have authority to deal with that—
[THE DEPARTMENT’S ATTORNEY]: Right. Yes, sir.
THE COURT: —because that is part of the motion to adopt and enforce out of Rhode Island. If it is dealing with monies that were sent since that date, then that’s another matter.
Counsel for the Department argued that since Mr. Aponte was not present at the hearing and because there was no competent proof of payments made since March 29, 2004, those amounts could not be adjudicated. The hearing officer agreed that Mr. Aponte had the burden to show what payments he had made. Mr. Aponte’s counsel asked the court to “bifurcate” the issues. The trial court agreed:
THE COURT: But I’m going to go ahead and bifurcate this. Mr. Rice, I’m going to give you one more bite of the apple. But I’m not in any way pleased by the fact that Mr. Aponte is not here. COUNSEL: I appreciate your mercy, and understand your position 200 percent. You know me, I always do my best to do things correctly.
THE COURT: What I’m going to do is I’m going to make the finding as to what the arrearages are as of 03-29-04, reserve on any arrearages since then. And what I would like the attorneys to do is before this — that aspect of the case is reset for hearing is see if they can get together. You need to submit Mr. Castro’s office copies of these checks and any other receipts that you have and see if you all can work it out before I have to deal with it. And, again, let’s see if there’s — I can tell you this—
COUNSEL: Yes.
THE COURT: That since the order was issued in February, he is in arrearage already $261.53. In fact, he’s only made two payments of child support since that order was issued; the last one, 03-17-05. So the next step is going to be your motion to hold him in contempt of court.
The trial court subsequently adopted the hearing officer’s recommendations, noting in the judgment that although the arrear- *650 age as of March 29, 2004, was established to be $15,976.23, the court reserved ruling on arrears from “3/29/04 to date.” There plainly was no error on the part of the trial court in fashioning the order it issued. The amount identified on March 29, 2004, was correct. Given the lack of evidence at the June 1 hearing, the court cannot be faulted for failing to adjudicate the legal effect of events subsequently occurring.
AFFIRMED.
SHARP, W., and PALMER, JJ., concur.